IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNIFER ROBLES,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER JUSTIN RUBY, in his individual and official capacities; SUPERVISOR DOE, in their individual and official capacities; and CITY OF OMAHA, a Nebraska political subdivision;<br><br>Defendants. | 8:22CV312<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendant Justin Ruby's ("Ruby") motion for summary judgment, Filing No. 58, pursuant to Fed. R. Civ. P. 56. Plaintiff Jennifer Robles ("Robles") sues Defendant Officer Justin Ruby, primarily under 42 U.S.C. §§ 1983 and 1988. Robles has filed this suit contending that Ruby used excessive force causing her injury. Supervisor Doe and the City of Omaha are likewise sued alleging failure to train and supervise. Robles requests compensatory damages, punitive damages, attorney fees, and costs. The Court has carefully reviewed the motion, briefs in support and in opposition, and concludes that the motion should be denied.

**BACKGROUND**

Jennifer Robles is a resident of Omaha, Douglas County, Nebraska. Officer Justin Ruby is a law enforcement officer of the City of Omaha Police Department. He is sued in his individual and official capacities for claims related to use of excessive force. Supervisor Doe is a law enforcement officer and supervisor of the City of Omaha Police Department and is also sued in their individual and official capacity. The City of Omaha

1

is a Nebraska political subdivision and is being sued for failure to train and control its officers.

The parties agree on the basic facts. Ruby was dispatched to Robles's residence for a domestic violence dispute. Filing No. 59 at 1. As he approached the residence, he was notified by dispatch that the fighting had ceased. *Id.* at 2; *see also* Filing No. 61-1, Douglas County Dispatch audio at 2:30–46. Ruby exited his car and saw a child outside with fingers in both ears and a female standing outside of the house. Filing No. 59 at 2. The female pointed to the house, stating the parties in question were in the house. *Id.* Ruby walked up to the porch where Robles met him at the door. *Id.* Approaching the glass front door, and from the front entry, Ruby had a view of the interior of the split-level home. Filing No. 61-2, Ruby Body Cam footage at 3:33–57. He asked who was involved in the fighting, and Robles pointed at two men. Filing No. 61-4; *see also* Filing No. 61-2 at 3:47–51. The men were standing at the top of the stairs; one had his back to Robles and Ruby and was holding a young child who was crying for Robles, her mother. Filing No. 61-2 at 3:33–50. Officer Ruby asked if he could enter. Filing No. 59 at 5. Robles asked her husband if Ruby could come into the home. Filing No. 61-7 at 30. Her husband said no. *Id.* Ruby then attempted to enter the home and said, "I'm coming in, I don't really fucking care." Filing No. 61-5 at 125, *see also* Filing No. 61-2 at 4:00–02. Robles held onto the doorframe, blocking him with her arms. Filing No. 61-2 at 4:00–02. Ruby moved Robles by jerking her arm, causing Robles to fall off of her porch and landed hard on the ground where she hit her head on the corner concrete. *Id.* at 4:02, *see also* Filing No. 73-26, Ring Camera footage. Ruby then called dispatch and asked for an ambulance

and a supervisor. Filing No. 61-2 at 4:13. Ruby later stated he felt concerned for the child, and that he was "not going to let a woman get beat." Filing No. 61-5 at 125, 161.

The supervisor arrived and advised Ruby to issue a citation to Robles for obstruction and stated Robles was "probably going to complain." *Id.* at 159–60. Robles did not go to the hospital at that time but did go later.

> Per OPD policy, officers shall issue citations in lieu of booking unless certain factors are present, such as 'such action is necessary to carry out legitimate investigative functions' and 'there was a reasonable likelihood the offense(s) would continue or resume, or the safety of the subject or other persons or property would be imminently endangered by release of the subject.'

Filing No. 72 at 17.

OPD's policy, Response to Resistance – Use of Force states that: "Officers are expected to utilize de-escalation techniques to provide themselves with more flexibility during potential use of force situations[.] . . . Furthermore, it is the policy of the OPD that officers will use appropriate de-escalation techniques during potential use of force situations . . . ." Filing No. 73-18 at 1.

Robles alleges that "[a]n MRI revealed a partial tear involving the posterior aspect of the supraspinatus tendon in her right shoulder. She underwent physical therapy, then a steroid injection, and finally arthroscopic surgery with biceps translocation/tenodesis with debridement glenoid laburm [sp.] and bursectomy. Her post-operative pain and limitation persists." Filing No. 1 at 3, ¶ 13.

Robles indicated that an Internal Affairs investigation yielded a finding that Ruby violated the following policies of the City of Omaha Police Department: 1) Response to Resistance - Use of Force; 2) Searches - Private Residences / Warrantless Non-

consensual Entry[1]; and 3) Use of Coarse/Profane or Insolent Language. Filing No. 1 at 3, ¶ 12.

### STANDARD OF REVIEW

A. *Summary Judgment*

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] The right against warrantless entry was understood at the Omaha Police Department, which articulated in its policy, "Searches – Private Property and Residences," that "[i]t is the policy of the Omaha Police Department (OPD) that officers shall not make a warrantless and nonconsensual entry into a private residence or other private property in order to conduct a search or make an arrest unless an exception to the warrant requirement exists." Filing No. 73-16 at 1.

The same policy defines "exigent circumstances" consistent with decisional authority, i.e., "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Smith v. Kansas City, Missouri Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009); *see also*, *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998).

Without a warrant, the police may enter a home in response to exigent circumstances. Exigent circumstances include threats to an individual's life, a suspect's imminent escape, the imminent destruction of evidence, or situations where "there is a compelling need for official action and there is no time to secure a warrant." *Radloff v. City of Oelwein, Iowa*, 380 F.3d 344, 348 (8th Cir. 2004); *Payton v. New York*, 445 U.S. 573, 586 (1980).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

B. *Qualified Immunity*

To determine if qualified immunity is applicable, there is a two-step inquiry: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct." *Ellis v. Houston*, 742 F.3d 307, 324 (8th Cir. 2014). "The purpose

of qualified immunity is to 'excuse an officer who makes a reasonable mistake in the exercise of his official duties,' but not one who 'intentionally abuse[s] a person's known rights.'" *Id.* at 326, citing *Edwards v. Baer*, 863 F.2d 606, 607 (8th Cir. 1988).

"Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information that the defendant possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (internal quotation and citation omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.*

## DISCUSSION

Although the parties agree on the basic facts, there are issues of material fact that must be decided by the jury. First, Robles contends that there was no reason for Officer Ruby to enter her house without permission. She contends that all of the commotion had calmed down, and there was no need for intervention. Ruby disagrees, arguing that he had genuine concern for the baby and her mother (Robles). The Court notes that Officer Ruby's narrative changed from baby to the mother as he discussed it with others. *See* Filing No. 61-5 at 125, then at 171. Second, Robles argues the evidence shows that Ruby used excessive force against her, knocking her to the ground and off the porch. Ruby disagrees that he used excessive force, arguing that he was sent there for a domestic issue and fighting at the premises. Ruby also argues that Robles obstructed him from doing his duties.

Third, Ruby argues that exigent circumstances existed, as he believed the baby was in danger. Robles asserts that the City of Omaha does have policies regarding

exigent circumstances and excessive force, and Ruby failed to comply with those policies. Filing No. 73-3. Ruby argues again that he was called to the home regarding a domestic assault, although it apparently turned out later that the fight was between the two men. Ruby believed the child being held by one of the men might be in the middle of the argument. See *United States v. Sanders*, 4 F.4th 672, 678 (8th Cir. 2021) (describing when exigent circumstances on a domestic violence call would be sufficient to allow entry into the home). The United States Court of Appeals for the Eighth Circuit has held that "the presence of a domestic violence suspect . . . does not alone justify [an officer's] warrantless entry." *Sanders*, 4 F.4th at 678. *Singer v. Ct. of Common Pleas, Bucks Cnty., Pa.*, 879 F.2d 1203, 1206–07 (3d Cir. 1989) (danger to police or others did not justify warrantless arrest of suspect accused of domestic violence in home, although police knew suspect possessed guns-no rational person would believe "that a lethal attack might come from a house at any moment"); *United States v. Morgan*, 743 F.2d 1158, 1162 (6th Cir. 1984) (warrantless entry not justified by immediate threat where suspect peacefully inside home, although officers had information that suspect was in possession of several guns, had fired guns earlier, and had threatened to "kill any law that tries to arrest them").

Robles argues that per the bodycam footage: there were no sounds of screaming or fighting as Ruby approached the house; there were no visible injuries outside; there were also no visible injuries on anyone Ruby could see in the house, including Robles; and there were no signs of broken dishes, overturned furniture or other indicia of a disturbance visible to Ruby. While Ruby claims that the two men in the living area were "posturing" for another fight, his claim is not supported by the bodycam evidence.

7

The Court finds that whether this is a reasonable mistake is a question for the jury. It is a jury question whether Ruby's force was objectively unreasonable. Courts have held that there must be sufficient exigency to enter a home without a warrant. *Morgan*, 743 F.2d at 1162; *United States v. Dell*, 487 F. App'x 440, 446–47 (10th Cir. 2012) ("although we are compelled 'to grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances,' there is little to defer to where the investigating officer demonstrates no connection between his training and experience and the suspicion of illegality"); **see also** *Shaw v. Jones*, 683 F. Supp. 3d 1205, 1237 n.46 (D. Kan. 2023) (noting that police officers "routinely justify their behavior by invoking the mantra of their 'training and experience' as law enforcement officials; yet, as this case demonstrates, they frequently lack specific, data-tested or even logical grounds for finding reasonable suspicion to detain or search a motorist").

Absent some kind of exigent circumstances, or a warrant, Robles has a privacy right in her home and her premises. The Eighth Circuit has asked whether the officer "could have 'reasonably but mistakenly' concluded that exigent circumstances were present based upon the information [the officer] possessed at the time." *Smith*, 586 F.3d at 581. The Circuit noted the difference between facts and "unsubstantiated suspicions," stating that the officer "asserts no facts indicating that the suspect was a threat to the child or others . . . the officers saw no other adult acting suspiciously inside the home and had no reason to believe weapons were there." *Id.* at 580. "Further, the warrantless search was a violation of policies regarding entrance into Robles's home.

Finally, this law was clearly established at the time of the attempted entry and entry by Ruby into the Robles home. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). For these

8

reasons, the Court will deny Ruby's motion for summary judgment based on qualified immunity.

THEREFORE, IT IS ORDERED THAT Defendant's motion for summary judgment based on qualified immunity, Filing No. 58, is denied, and this case shall proceed to trial.

Dated this 20th day of January, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge